**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-054-GKF-TLW |
| | ) | |
| TIGER HOBIA, as Town King and | ) | |
| member of the Kialegee Tribal | ) | |
| Town Business Committee, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the court are Motions to Dismiss filed by defendants Tiger Hobia, as Town King and member of the Kialegee Tribal Town Business Committee ("Hobia") [Dkt. #62], Florence Development Partners, LLC ("Florence") [Dkt. #64] and the Kialegee Tribal Town, a federally chartered corporation ("Town Corporation"). [Dkt. #70].  Defendants seek dismissal of this action for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

The State of Oklahoma ("State") filed suit on February 8, 2012, seeking declaratory and injunctive relief to prevent Hobia (as well as other tribal officers), Florence and the Town Corporation from proceeding with the construction and operation of the proposed "Red Clay Casino" in Broken Arrow, Oklahoma.  The State contends defendants are violating both the April 12, 2011, Gaming Compact between the Kialegee Tribal Town and the State ("State Gaming Compact") and the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA").

Hobia and the Town Corporation assert they are protected by sovereign immunity and are not proper parties.  All three defendants argue the court lacks Article III jurisdiction because the State lacks standing to bring this suit.  Further, defendants contend the controversy is not ripe for judicial review.

## I. Allegations of the Complaint

The Complaint alleges the State possesses sovereign powers and rights of a state with federally recognized and delegated authorities under IGRA. [Dkt. #1, Complaint, ¶6].  As a party and federally required signatory to the State Gaming Compact that the Tribal Town asserts authorizes it to operate a Class III gaming facility on the Broken Arrow Property, the State has a direct and substantial interest in ensuring full compliance with the terms of the Compact, and IGRA specifically authorizes the State to file suit in federal court.  [*Id.*] (citing 25 U.S.C. § 2710(d)(7)).  Additionally, the State has an interest in protecting its citizens from unauthorized and inappropriate gaming operations by ensuring the proposed casino does not serve as precedent for expanding casinos into areas where a tribe cannot satisfy the jurisdictional, governmental and land status requirements of the IGRA and the applicable Gaming Compact. [*Id.*].

The Kialegee Tribal Town is a federally recognized Indian tribe organized under Section 3 of the Oklahoma Indian Welfare Act, 25 U.S.C. § 503 (the "OIWA"), with a Constitution and By-laws approved by the Secretary of the Interior on April 14, 1941, and ratified by the Kialegee Tribal Town on June 12, 1941) (the "1941 Constitution").  [*Id.*, ¶7].  The 1941 Constitution established the Kialegee Tribal Town Business Committee ("Committee") as the Kialegee Tribal Town's governing body.  [*Id.*]  Tiger Hobia, the Town King of the Kialegee Tribal Town, is a member of the Committee and a citizen and resident of the state.  [*Id.*, ¶8].  Under Article 2 of

2

the corporate charter of the Town Corporation, the "membership, the officers, and the management of the incorporated tribal town shall be as provided in the [Kialegee Tribal Town's] Constitution and By-laws." [*Id.*]. Hobia is sued in his official capacities as a member and officer of the Committee and the Town Corporation. [*Id.*]. The State alleges the actions of Hobia and other members and officers of the Committee and of the Kialegee Tribal Town and Town Corporation exceed their authority under federal law and, therefore, Hobia is not cloaked with any immunity from suit. [*Id.*].

Florence is an Oklahoma limited liability company doing business in the State of Oklahoma. [*Id.*, ¶9].

The Town Corporation is a federally chartered corporation under Section 3 of the OIWA (the "Town Corporation") doing business in the State of Oklahoma. [*Id.*, ¶10].[1]

The Complaint alleges the court has jurisdiction of the action under 28 U.S.C. § 1331 and/or 25 U.S.C. §2710(d)(7) to issue relief under 28 U.S.C. § 2201(a). [*Id.*, ¶11]. The action arises under and requires the interpretation and construction of provisions of the Constitution and laws of the United States including, without limitation, IGRA, that Act's implementing regulations, 25 CFR §§ 501-472, and the federally approved Gaming Compact between the Kialegee Tribal Town and the State of Oklahoma. [*Id.*, ¶12]. A case of actual controversy exists between Oklahoma and the defendants with respect to whether the Kialegee Tribal Town and its officials have authority under federal law to construct and operate a gaming facility on the Broken Arrow Property. [*Id.*, ¶13].

---

[1] The State, in its Complaint, distinguishes between the Kialegee Tribal Town, a federally recognized tribe, and the Kialegee Tribal Town Corporation, a federally chartered corporation under the OIWA, 25 U.S.C. § 503. The former is not named as a defendant; the latter is.

3

The complaint alleges any sovereign immunity from suit of the Kialegee Tribal Town or the Town Corporation is not a defense to this suit because the action is against the officers and Committee members of such entities sued in their official capacities, and Article 3(b) of the corporate charter of the Town Corporation provides that it has the power "to sue and be sued." [*Id.,* ¶14].  The State alleges exhaustion of tribal remedies is neither necessary nor appropriate with respect to its claims because the Kialegee Town Tribal Court plainly lacks subject matter jurisdiction over the controversy and IGRA specifically authorizes the State to file its action in federal court.  [*Id.,* ¶16] (citing 25 U.S.C. § 2710(d)(7).

The Kialegee Tribal Town is a separate, independent federally recognized Indian tribe which first received recognition as a tribe in 1936.  [*Id.,* ¶17]. It allegedly has an enrolled membership of less than 500.  [*Id.*].  Headquartered in Wetumka, Oklahoma, the Kialegee Tribal Town has no reservation and has characterized itself as a "landless tribe."  [*Id.,* ¶18].  The 1941 Constitution adopted by the Kialegee Tribal Town provides that the "supreme governing body of the Town shall be the adult members of the Town, both male and female who are 21 years of age or older, through the actions of the Business Committee."  [*Id.,* ¶19] (quoting Article IV, Section 1 of the 1941 Constitution).  Under the 1941 Constitution, "the Business Committee of the Town shall consist of the elected officers and all members of the Advisory Committee."  [*Id.*] (quoting Article IV, Section 2 of the 1941 Constitution).  The officers of the Town are "the Town King, 1st Warrior, 2nd Warrior, Secretary and the Treasurer."  [*Id.,* ¶20] (quoting Article VI, Section 2 of the 1941 Constitution).

On July 23, 1942, The United States Department of the Interior, Office of Indian Affairs, issued a Corporate Charter to the Town Corporation pursuant to the OIWA (the "1942 Charter"). [*Id.,* ¶21].  The Kialegee Tribal Town ratified the 1942 Charter on September 17, 1942.  [*Id.,*

¶21].  Under Section 2 of the 1942 Charter, "the membership, the officers, and the management of the incorporated tribal town shall be as provided in the … Constitution and By-laws."  [*Id.*]. Section 3(b) of the 1942 Charter provides, "subject to any restrictions contained in the Constitution and laws of the United States or in the Constitution and By-laws of the Tribal Town, and to the limitations of section 4 and 5 of this Charter," the Town Corporation:

> Shall have the following corporate powers as provided by section 3 of the Oklahoma Indian Welfare Act of June 26, 1936: … (b) To sue and be sued; to complain and defend in any courts; Provided, however, That the grant or exercise of such power shall not be deemed a consent by the Tribal Town or by the United States to the levy of any judgment, lien, or attachment, upon the property of the Tribal Town other than income or chattels specially pledged or assigned.

[*Id., ¶22*].

In 1988, Congress passed the IGRA to establish a statutory basis for the operation and regulation of gaming by Indian tribes.  [*Id., ¶23*].  Under the IGRA, gaming is divided into three categories:  Class I (defined as "social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as part of, or in connection with, tribal ceremonies or celebration); Class II ("the game of chance commonly known as bingo…and card games that (I) are explicitly authorized by the laws of the State, or (II) are not explicitly prohibited by the laws of the State and are played at any location in the State, but only if such cared games are played in conformity with those laws and regulations (if any) of the State regarding hours or periods of operation of such card games or limitations on wagers or pot sizes in such card games"); and Class III ("all forms of gaming that are not class I or class II gaming"). [*Id.*, ¶24] (citing 25 U.S.C. § 2703(6), § 2703(7), §2703(8)).

IGRA provides that an Indian may engage in Class III gaming only on "Indian lands" and "pursuant to an ordinance adopted by the Indian Tribe having jurisdiction over such lands."  [*Id., ¶25*] (citing 25 U.S.C. § 2710(d)(1)(A)(i)).  "Indian lands" are defined as:

> (A) all lands within the limits of any Indian reservation; and
>
> (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

[*Id.,* ¶26] (citing 25 U.S.C. § 2703(4) and 25 C.F.R. § 502.12(b)).

Additionally, IGRA mandates that Class III gaming may only be "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State…" and approved by the Secretary of the Interior or his or her designee. [*Id.,* ¶27] (citing 25 U.S.C. §§ 2710(d)(1)(C) and (d)(8).

The State alleges that in 2004, it established a model tribal gaming compact that is essentially a "pre-approved" offer to federally recognized tribes in the State ("Model Compact"). [*Id.,* ¶28]. If a tribe accepts the Model Compact, obtains approval from the Secretary of the Interior and complies with the requirements of the Compact and the IGRA, the tribe can then operate gaming facilities "only on its Indian lands as defined by IGRA" (i.e., lands in which the tribe has a possessory interest and over which the tribe has jurisdiction and exercises governmental powers). [*Id.,* ¶28] (citing Model Compact, Part 5(L)).

On April 12, 2011, the Kialegee Tribal Town accepted the model gaming compact with the State of Oklahoma (the "State Gaming Compact"). The Secretary of the Interior approved the State Gaming Compact on July 8, 2011. [*Id.,* ¶29]. The State Gaming Compact only authorizes "covered games," as defined in the Compact, by the Kialegee Tribal Town on "its Indian lands as defined by the Indian Gaming Regulatory Act, 25 U.S.C. §2703(4)." [*Id.,* ¶30].

The property on which defendants are constructing the gaming facility is located at the southwest corner of Olive Avenue and Florence Place in Broken Arrow, Oklahoma, a city situated contiguous to and southeast of Tulsa, Oklahoma ("Broken Arrow Property"). [*Id.,* ¶31].

6

The property is located across the street from the Broken Arrow Campus of Tulsa Technology Center, a vocational and technology school operated by the Tulsa Tech School District No. 18. [*Id.*, ¶32].  The Broken Arrow Property is  also located in close proximity to several residential subdivisions and roughly one-half mile from the site of a proposed elementary school and pre-K center.  [*Id.*].

The State alleges, upon information and belief, that the Broken Arrow Property is currently owned by Wynema Capps and Marcella Giles as tenants in common, subject to federal restraints against alienation.  [*Id.*, ¶33].   The State further alleges, upon information and belief, that Capps and Giles are not enrolled members of the Kialegee Tribal Town but rather are enrolled members of the Muscogee (Creek) Nation.  [*Id.*, ¶¶34-35].  The Broken Arrow Property is more than 70 miles north and east from the Kialegee Tribal Town's headquarters in Wetumka, Oklahoma.  [*Id.*, ¶36].

The State alleges because the Kialegee Tribal Town does not have a reservation, the Broken Arrow Property is not within the limits of an Indian reservation within the meaning of the IGRA.  [*Id.*, ¶37] (citing 25 U.S.C. § 2703(4)(B)).  Nor is the Broken Arrow Property held in trust by the United States for the benefit of the Kialegee Tribal Town or for the benefit of an enrolled member of the Kialegee Tribal Town.  [*Id.*, ¶¶38-39].  The State also alleges the Broken Arrow Property is not held by either the Kialegee Tribal Town or an enrolled member of the Kialegee Tribal Town subject to restriction by the United States against alienation.  [*Id.*, ¶40].

The State alleges even if allotted lands held by members of another tribe could be considered Indian lands of the Kialegee Tribe—which the State denies—the property cannot be the Kialegee Tribe's "Indian Lands" within the meaning of the State Gaming Compact because

the Kialegee Tribal Town does not have a possessory interest in the property. [*Id.,* ¶41]. It contends the Broken Arrow Property does not meet the definition of "Indian land" upon which the Kialegee Tribal Town can conduct Class III gaming because it is not held by members of the Kialegee Tribal Town and the Kialegee Tribal Town is not a tribe "having jurisdiction over such lands," as required by the IGRA, 25 U.S.C. § 2710(d)(A)(i). [*Id.,* ¶42]. Moreover, even if the Kialegee Tribal Town had jurisdiction over the Broken Arrow Property—which the State denies—the property is not land over which the Kialegee Tribal Town exercises governmental power. [*Id.,* ¶43]. Consequently, the property is neither "Indian lands," as required by the IGRA, 25 U.S.C. § 2710(d)(A)(i), nor "its Indian lands," as required by the State Gaming Compact, Part 5(L). [*Id.*].

The State alleges, upon information and belief, that in 2011, the Kialegee Tribal Town attempted to enter into a Prime Ground Lease with Wynema Capps and Marcella Giles covering the Broken Arrow Property. [*Id.,* ¶44]. Capps and Giles filed a petition in Tulsa County District Court seeking approval of the proposed Prime Ground Lease. [*Id.*]. The State further alleges, upon information and belief, the Kialegee Tribal Town contemplated that, once the Prime Ground Lease was approved, the Kialegee Tribal Town would sublease the Broken Arrow Property to Golden Canyon Partners, LLC, which would then construct the proposed gaming facility and sublease the facility to the Kialegee Tribal Town to operate. [*Id.,* ¶45].

On August 17, 2011, the Tulsa County District Court entered an order refusing to approve the proposed Prime Ground Lease and the balance of the transaction contemplated. [*Id.,* ¶46]. In the order, the court concluded, "an individual citizen cannot transfer government jurisdiction over his or her property by the terms of a lease." [*Id.*].

The State alleges that, prior to the Tulsa County District Court's order, the Kialegee Tribal Town, Capps and Giles restructured their proposed transaction in an effort to evade requirements for judicial or Secretary of the Interior approval of the proposed lease and development of the Broken Arrow Property as a Class III gaming facility.  [*Id.*, ¶47].  The State also alleges that in the fall of 2011, Capps and Giles entered into a lease of the Broken Arrow Property to Florence Development Partners, LLC, with an initial term of six years and 11 months.  [*Id.*, ¶48].  The State further alleges upon information and belief that, under the lease, the Kialegee Tribal Town has no possessory interest in the Broken Arrow Property.  [*Id.*].  The State also alleges upon information and belief, that the Town Corporation, Capps, Giles and others are members of the defendant LLC, Florence.  [*Id.*, ¶49].  The lease has not been reviewed and approved by the Tulsa County District Court, as required by the Act of August 4, 1947, 61 O.S. § 731 (the "1947 Act") or by the Bureau of Indian Affairs as required by 25 U.S.C. § 415 and 25 C.F.R. § 162.104(d).  [*Id.*, ¶50].

In late December 2011, defendants began grading and other site preparation and construction-related activities leading to the construction and ultimate operation of the Class III gaming facility on the Broken Arrow Property notwithstanding that (i) Capps and Giles are not members of the Kialegee Tribal Town; (ii) the purported lease of the Broken Arrow Property grants no interest to the Kialegee Tribal Town and has not been approved by Tulsa County District Court; (iii) The Kialegee Tribal Town does not have jurisdiction over the Broken Arrow Property; and (iv) the Kialegee Tribal Town does not exercise governmental functions over the Broken Arrow Property.  [*Id.*, ¶51].

The State asserts four claims for relief:

(1) Declaratory judgment that the Committee Defendants lack authority under federal law and the federally approved State Gaming Compact to construct or operate a gaming facility on the Broken Arrow Property. [*Id.*, ¶57]

(2) Declaratory judgment that (i) the Broken Arrow Property is not land within the Kialegee Tribal Town's jurisdiction and is not land over which the Kialegee Tribal Town exercises governmental power and (ii) Defendants' efforts to construct or operate a Class III gaming facility on the Broken Arrow Property are in direct violation of the requirements of the IGRA and the State Gaming Compact. [*Id.*, ¶68].

(3) Entry of a preliminary injunction enjoining defendant or anyone acting by, through or under them, from taking any action to construct or operate a Class III gaming facility on the Broken Arrow Property during the pendency of this action.  [*Id.* at 20, ¶3].

(4) Entry of a permanent injunction permanently enjoining defendants, or anyone acting by, through or under them, from taking any action to construct or operate a Class III gaming facility on the Broken Arrow Property. [*Id.,* at 21, ¶4].

## II. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Although the new *Twombly* standard is "less than pellucid," the Tenth Circuit Court of Appeals has interpreted it as a middle ground between "heightened fact pleading," which is expressly rejected, and complaints that are no more than "labels and conclusions," which courts should not allow. *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974. Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . .[and] the type

of case." *Id.* (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)).  A simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*).  *Id.*

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference.  *Smith v. U.S.,* 561 F.3d 1090, 1098 (10th Cir. 2009).  The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Id.*

Although defendants couched their motions as Rule 12(b)(6) motions to dismiss for failure to state a claim, the motions could also be characterized in part as Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction.  Rule 12(b)(1) motions generally take one of two forms.  The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell,* 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan,* 351 F.3d 1001, 1013 (10th Cir. 2003)).  Here, defendants have facially attacked the sufficiency of the Complaint's allegations as to the existence of subject matter jurisdiction.  In addressing a facial attack under Rule 12(b)(1), the court must "presume all of the allegations contained in the amended complaint to be true."  *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir. 2002).  Dismissal is proper where "the complaint fails to allege any basis for subject matter jurisdiction over the claims raised therein."  *Harrison v. United States,* 329 Fed. Appx. 179, 181 (10th Cir. 2009) (unpublished).  In their reply brief, defendants for the

first time presented evidence, which does not appear to challenge the factual basis upon which subject matter jurisdiction rests and, in any event, the court has stricken for the purpose of this motion.

## III. Analysis

### A. Sovereign Immunity Challenge

Hobia and the Town Corporation assert they are not parties to the Gaming Compact and are not themselves constructing a casino; therefore the claims against them should be dismissed. Additionally, they invoke the shield of sovereign immunity.  The State argues both defendants are proper parties and neither is immune from a suit for declaratory and injunctive relief under the doctrine of *Ex parte Young*.

Hobia—as Town King—is a member of the Kialegee Tribal Town's governing body, the Kialegee Tribal Town Business Committee ["Committee"], as well as the Town Corporation.  As noted above, the State has named him in his official capacities.  The State alleges on information and belief the Town Corporation is a member of Florence Development Partners, LLC.[2]  The State alleges defendants' activities exceed the Kialegee Tribal Town's powers under federal law and violate federal law, including IGRA and the Gaming Compact.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Crowe & Dunlevy, P.C. v. Stidham,* 640 F.3d 1140, 1153 (10th Cir. 2011) (quoting *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58 (1978). "This immunity extends to tribal officials, so long as they are acting within the scope of their

---

[2] In their consolidated Reply, defendants asserted for the first time that the Town Corporation is not a member of Florence. [Dkt. #93 at 4].  They attached the Declaration of Clifford S. Rolls, a Managing Member of Golden Canyon Partners, LLC, in support of this statement.  [Dkt. #93, Ex. 1, Rolls Dec.].  The court has stricken the Rolls Declaration because it was offered for the first time in the reply, and because the argument may be addressed in future motions.  [Dkt. #104].

official capacities." *Crowe & Dunlevy,* 640 F.3d at 1154.  "Tribal immunity is similar, although not identical, to immunity afforded to the states under the Eleventh Amendment." *Id.* "Because tribal immunity is a matter of federal common law, not a constitutional guarantee, its scope is subject to congressional control and modification." *Id.*

Although tribal sovereign immunity generally extends to tribal officials acting within the scope of their official authority, a tribe's sovereign immunity does not extend to an official when the official is acting outside the scope of the powers that have been delegated to him.  *Burrell v. Armijo,* 603 F.3d 825, 832 (10th Cir. 2010) (citing *Burrell v. Armijo,* 456 F.3d 1159, 1174 (10th Cir. 2006).  A tribe's powers are defined by federal statutes.  *United States v. Lara,* 541 U.S. 193, 202 (2004), and "an Indian tribe may not unilaterally create sovereign rights in itself that do not otherwise exist." *Kansas v. United States,* 249 F.3d 1213, 1219 (10th Cir. 2001).  "If the sovereign did not have the power to make a law, then the official by necessity acted outside the scope of his authority in enforcing it, making him liable to suit.  Any other rule would mean that a claim of sovereign immunity would protect a sovereign in the exercise of power it does not possess." *Tenneco Oil Co. v. Sac and Fox Tribe of Indians of Oklahoma,* 725 F.2d 572, 574 (10th Cir. 1984).

In *Ex parte Young,* 209 U.S. 123, 159-60 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity for suits against state officials seeking to enjoin alleged ongoing violations of federal law.  As the Tenth Circuit has explained:

> The *Ex parte Young* exception proceeds on the fiction that an action against a state official seeking only prospective injunctive relief is not an action against the state and, as a result, is not subject to the doctrine of sovereign immunity.  By adhering to this fiction, the *Ex parte Young* doctrine enables federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States.

*Crowe & Dunlevy,* 640 F.3d at 1154 (quotations and citations omitted).

In *Crowe & Dunlevy,* the Tenth Circuit acknowledged it had previously applied *Ex parte Young*—although implicitly—in the tribal context.  *Id.* (citing *Burrell v. Armijo,* 603 F.3d 825, 1174 (10th Cir. 2006) and *Tenneco Oil Co. v. Sac & Fox Tribe of Indians,* 725 F.2d 572, 574 (10th Cir. 1984) (per curiam)).  The court stated, "Today we join our sister circuits in expressly recognizing *Ex parte Young* as an exception not just to state sovereign immunity but also to tribal sovereign immunity." *Id.*  Further, "[t]he Supreme Court has explained that, in determining whether the doctrine of *Ex parte Young* applies, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Id.* at 1155 (citing *Verizon Md., Inc. v. Pub. Serv. Comm'n,* 535 U.S. 635, 645 (2002)).

In this case, the State, alleging defendants' official-capacity actions violate IGRA and the Gaming Compact, seeks prospective declaratory and injunctive relief.  Pursuant to *Ex parte Young* and *Crowe & Dunlevy,* and accepting as true the well pled allegations of the Complaint, the court rejects the sovereign immunity claims of Hobia and the Tribal Town Corporation, and concludes they are both proper party defendants.

Additionally, Congress has abrogated tribal immunity from suits involving gaming activities.  IGRA explicitly provides that the United States district courts shall have jurisdiction over "any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into" pursuant to the IGRA.  25 U.S.C. § 2710(d)(7)(A)(ii).  *See also Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,* 523 U.S 751, 758 (1998) (citing 25 U.S.C.  § 2710(d)(7)(A)(ii) as an example of Congressional restrictions of tribal immunity); *Mescalaro Apache Tribe v. State of New Mexico,* 131 F.3d 1379, 1385 (10th Cir. 1997) ("IGRA waived

15

tribal sovereign immunity in the narrow category of cases where compliance with IGRA's provisions is at issue and where only declaratory or injunctive relief is sought.").

Finally, the "sue and be sued" language in the Town Corporation's Corporate Charter results in a waiver of sovereign immunity by the Town Corporation.  *See Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.,* 491 F. Supp.2d 1056, 1065 (N.D. Okla. 2007), *aff'd sub nom.*, *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.,* 546 F.3d 1288 (10th Cir. 2008).[3]  *See also Marceau v. Blackfeet Housing Auth.,* 455 F.3d 974, 979-81 (9th Cir. 2006); *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 874 F.2d 550, 552 (8th Cir. 1989).

## B. Rule 19

Defendants assert this action must be dismissed because the Kialegee Tribal Town is an indispensable party under Fed.R.Civ.P. 19.  "The moving party has the burden of persuasion in arguing for dismissal."  *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.,* 94 F.3d 1407, 1411 (10th Cir. 1996) (quoting *Makah Indian Tribe v. Verity,* 910 F.2d 555, 558 (9th Cir. 1990)).

When faced with a Rule 19 challenge, the court must first determine whether the absent person is a required party to the lawsuit and, if so, whether joinder of the required party is feasible.  *Davis v. United States,* 192 F.3d 951, 957 (10th Cir. 1999).  An absent party "must be joined as a party if, in that person's absence, the court cannot accord complete relief among existing parties." Fed.R.Civ.P. 19(a)(1)(A), or the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may impair or impede the non-party's ability to protect the interest or leave a party subject to substantial risk of

---

[3] The Tenth Circuit has held the presence of a "sue and be sued" clause in a tribal corporate charter does *not* waive the *tribe's* immunity as a tribe.  *Seneca-Cayuga Tribe Oklahoma v. State of Oklahoma ex rel. Thompson,* 874 F.2d 709, 716 n. 9 (10th Cir. 1989).  The State does not contend the language of the corporate charter results in a waiver of sovereign immunity by the Kialegee Tribal Town.  [Dkt. #86 at 16].

incurring multiple or otherwise inconsistent obligations.  *Id.,* (a)(1)(B).  Under Rule 19 (b), when

joinder of a required party is not feasible, the court must determine "whether, in equity and good

conscience, the action should proceed among the existing parties, or should be dismissed."

Here, pursuant to *Ex parte Young,* the State has the legal authority to obtain declaratory

and injunctive relief against Hobia, a tribal official, in his official capacity.  Further, the Kialegee

Tribal Town's interests are so closely aligned with Hobia, its Tribal Town King, that there is

virtually no risk the tribe's interests will be impaired or impeded.  *See Kansas v. United States,*

249 F.3d 1213, 1226-27 (10th Cir. 2001) (finding the potential for prejudice to the absent Miami

Tribe was "largely nonexistent" due to the presence of, *inter alia*, tribal officials).

The court finds defendants have not met their burden of demonstrating the Kialegee

Tribal Town is a required party that must be joined in order to accord complete relief among

existing parties.

### C. Standing Challenge

Hobia, the Town Corporation and Florence Development argue the State has not alleged

facts establishing it has standing under Article III of the Constitution to obtain the relief

requested.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not

questions and issues but 'Cases' or 'Controversies.'" *Arizona Christian School Tuition

Organization v. Winn,* 131 S. Ct. 1436, 1441 (2011).  To state a case or controversy under

Article III, a plaintiff must establish standing.  *Id.* at 1442.  The minimum constitutional

requirements of standing are:

> **First**, the plaintiff must have suffered an "injury in fact"—an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) "actual or
> imminent, not "conjectural" or "hypothetical." **Second**, there must be a causal
> connection between the injury and the conduct complained of—the injury has

to be "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court." **Third**, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)) (emphasis added).

## 1. "Injury in Fact"

The first requirement for standing is that the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not "conjectural" or "hypothetical." The "injury in fact" element requires the plaintiff to demonstrate an injury to a "legally cognizable right." *See McConnell v. Federal Election Com'n,* 540 U.S. 93, 227 (2003), *overruled on other grounds, Citizens United v. FEC,* --U.S.--, 130 S. Ct. 876 (2010); *Diamond v. Charles,* 476 U.S. 54, 64 (1986); Moore's Fed. Practice § 101.40[5][a] (3d ed. 2006).

The State asserts it has a "legally cognizable right" both as a sovereign and a party to the Compact, and as *parens patriae* of the citizens of Oklahoma.  States have two "easily identifiable" sovereign interests:  first, the exercise of sovereign power over individuals and entities within the relevant jurisdiction ("this involves the power to create and enforce a legal code, both civil and criminal"); and second, the demand for recognition from other sovereigns ("frequently this involves the maintenance and recognition of borders").  *Alfred A. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez,* 458 U.S. 592, 601 (1982).

*Parens patriae* interests are not sovereign interests, but rather "quasi-sovereign" interests which confer standing to maintain lawsuits.  *Parens patriae* actions generally fall into two categories.  "First, a State has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."  *Id.* at 607.  "Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal

18

system." *Id.*  In order to maintain a *parens patriae* action, the State "must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party." *Id.*  However, "a State does have an interest, independent of the benefits that might accrue to any particular individual, in assuring that the benefits of the federal system are not denied to its general population." *Id.* at 608.

When the State is plaintiff, it deserves "special solicitude" in the standing analysis. *Massachusetts v. E.P.A.,* 549 U.S. 497, 520 (2007).  This is particularly true when the State has filed suit to protect its sovereign powers and authorities.  *See Georgia v. Tennessee Copper Co.,* 206 U.S. 230 (1907) (concluding that a state had *parens patriae* standing to challenge an action that affected the State's power over its territory).

The Complaint alleges defendants are constructing, with the intent of opening and operating, a casino in violation of  IGRA and the Gaming Compact between the State and the tribe. [Dkt. #2, ¶13].   Further, it alleges the site of the casino is in close proximity to several residential subdivisions and the site of a proposed new elementary school, and "conflicts with and would adversely affect adjoining and nearby uses and is inappropriate in the proposed location."  [*Id.,* ¶32].

The court concludes the State has a sovereign interest in enforcing the Gaming Compact, including the location provision in Part 5(L) to which the tribe has agreed.  Additionally the State has quasi-sovereign interests in protecting the health and well-being of residents in areas surrounding the site of the proposed casino and challenging an action that affects the State's power over its territory.  Further, the allegations of the Complaint describe an interest that is concrete and particularized, as required under *Lujan* and *Arizona Christian School.*

To establish standing, the State must also demonstrate the threat to its interests is actual or imminent.  Although the plaintiff must show "a realistic danger of sustaining a direct injury" as a result of defendants' conduct, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."  *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).  Thus, contrary to defendants' argument, the requirement of imminent harm does not mean the court must wait until the doors of the proposed casino are thrown open for business to consider the State's claim for  injunctive relief.

The court finds the commencement of grading and construction of a facility for Class III gambling operations, combined with public statements by the Kialegee Tribal Town of its intent to conduct such operations, establish impending threatened injury, as required by *Babbitt.*

The court concludes the allegations of the Complaint satisfy the "injury-in-fact" inquiry of the standing analysis.

### 2. Causation

To satisfy the second element of causation, the State must show that its injury is "'fairly traceable' to the defendants' actions."  *Habecker v. Town of Estes Park, Colo.,* 518 F.3d 1217, 1225 (10th Cir. 2008).   The State's alleged injuries are directly traceable to defendants' purported violation of the Gaming Compact and IGRA.  Therefore, the causation element is met.

### 3. Redressability

To satisfy the third element of redressability, plaintiff must "demonstrate a substantial likelihood that the relief requested will redress its injury in fact."  *Nova Health Systems v. Gandy,* 416 F.3d 1149, 1158 (10th Cir. 2005).  This requires a showing that "a favorable judgment will relieve a discreet injury, although it need not relieve his or her every injury." *Id.*

Clearly an injunction prohibiting construction or operation of a Class III gaming facility would redress the alleged violations of the Compact and IGRA.

The court concludes the Complaint adequately pleads facts establishing Article III standing.

### D. Ripeness Challenge

Defendants argue the State has no right under IGRA or the Gaming Compact to obtain an injunction against mere construction of a facility and that its claim for an injunction against Class III gambling is not yet ripe.

"[T]he doctrine of ripeness is intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Skull Valley Band of Goshute Indians v. Neilson,* 376 F.3d 1223, 1237 (10th Cir. 2004).

The court has determined that the Complaint's factual allegations establish impending threatened injury sufficient to confer standing.  "If a threatened injury is sufficiently "imminent" to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *Am. Civil Liberties Union v. Johnson,* 194 F.3d 1149, 1155 (10th Cir. 1999) (internal quotation marks, citations, brackets omitted).  Therefore the court—without deciding at this juncture whether the State may obtain an injunction against *construction*—concludes its request for an injunction against Class III gaming satisfies the requirement of ripeness.

Defendants also assert the State's claim is not ripe because the State, under the terms of the Gaming Compact, must first submit the dispute to arbitration.  Part 12 of the Gaming Compact provides that in the event of a dispute, arbitration "*may* be invoked" to attempt to resolve the dispute; either party "*may* refer a dispute arising under the Compact to arbitration;" and either party "*may* bring an action against the other in federal court for the de novo review of

any arbitration award." [Dkt. #6, Ex. 7, Compact at 25-26].  The use of the term "may" (as opposed to "shall") indicates the parties intended this remedy to be optional and not exclusive. *See Ryder Truck Rental, Inc. v. Nat'l Packing Co.,* 380 F.2d 328, 332 (10th Cir. 1967).  Further, Part 9 of the Compact, "Jurisdiction," provides:  "This Compact shall not alter tribal, federal or state civil adjudicatory or criminal jurisdiction."  [Dkt. #6, Ex. 7, Compact at 19].  Federal civil jurisdiction exists over "*any* cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact."  25 U.S.C. §2710(d)(7) (emphasis added).

The court finds that under the Gaming Compact, the State had the *option* to avail itself of the dispute resolution process set out in Part 9 of the Compact, but was not *required* to do so. Therefore, the court concludes Part 9 of the Gaming Compact does not bar the State from seeking relief in this court.

## IV. Conclusion

For the foregoing reasons, defendants' Motions to Dismiss [Dkt. ##62, 64, and 70] are denied.

ENTERED this 26th day of April, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT