**IN UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STATE OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12 cv-00054-GFK-TLW |
| | ) | |
| (1) TIGER HOBIA, as Town King | ) | |
| and member of the Kialegee Tribal | ) | |
| Town Business Committee, et al.; | ) | |

### THE STATE OF OKLAHOMA'S BRIEF ON THE DEFERENCE THIS COURT SHOULD GIVE TO AGENCY LETTERS IN UNRELATED CASES WHEN CONSIDERING THE STATE'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff, the State of Oklahoma ("State"), submits this brief by request of the Court to address the level of consideration or deference this Court should give to letters and other written interpretations of law and fact made by executive departments or agencies in cases other than the one at bar, with focus on the June 24, 2009 decision of the Assistant Secretary of the Interior-Indian Affairs submitted by Defendants as Exhibit 10 ("*UKB I*"). The State submits that the Court is not *required* to defer to any such decision or interpretation, but that the Court may consider some agency documents to whatever degree it considers them instructive. The multiple, conflicting, inconsistent Bureau of Indian Affairs ("BIA") documents directed to the United Keetoowah Band, however, are not of the category this Court should consider persuasive.

Deference to an agency decision under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984), does not apply when the litigation is not a challenge to an agency decision. *Id.* at 842 (setting forth rule of *Chevron* deference in context of an APA appeal). This case is not a challenge to an agency action under the Administrative Procedure Act, 5 U.S.C. §551 *et seq.* ("APA"). Neither the National Indian Gaming Commission ("NIGC") nor the BIA has made a determination regarding the propriety of the Tribal Town's Red Clay Casino on the Broken Arrow Property. Even if this Court were directly reviewing an NIGC or BIA determination,

executive branch or administrative "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), limited on other grounds by *Barnhart v. Walton,* 535 U.S. 212 (2002). Rather, "interpretations contained in formats such as opinion letters are entitled to respect under our decision in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the power to persuade." *Id.* (internal quotation marks omitted). *Skidmore* deference provides that

> the rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

323 U.S. at 140.

Then-Judge Sotomayor and the Second Circuit refused to consider an NIGC opinion letter from an unrelated case because it lacked the power to persuade.

> [W]e have considered the 2000 opinion letter by the deputy general counsel for the NIGC issued in an unrelated case-but relied upon by the [plaintiff] here-that asserts that land intended to be placed into trust, but not yet held in trust by the United States, is not Indian land. Because this position was set forth in an opinion letter and has not been promulgated by an NIGC regulation, this Court owes it only the limited deference set forth in *Skidmore* []. As such, the interpretation reflected in the Coleman Opinion Letter is entitled to deference only to the extent that it has the power to persuade us. We conclude this letter lacks persuasive power.

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 127 (2d Cir. 2008) (internal citations and footnote omitted) (citing *Christensen*, 529 U.S. at 587). The *Catskill Development* court found that the proffered NIGC opinion letter was not persuasive because it applied statutory language that the court had rule was "inconsistent with congressional design," the

letter's conclusions were "hedged as 'preliminary' and were expressly limited to the facts before her," and the NIGC has expressly acted in a different manner to the contracts at issue in the case. *Id.* (internal citation omitted).

While there is no requirement that this Court defer to any agency decision, the Court may consider certain agency decisions instructive if the analysis in those decisions is rooted in a legal analysis developed by federal courts, *e.g.* the analysis used to determine whether a particular tribe satisfies the IGRA's definition of "governmental power."  Courts may look to agency "rulings, interpretations, and opinions" for guidance as they "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1308 (10th Cir. 2011) (quoting *Skidmore*, 323 U.S. at 140).  For example, an agency decision may be particularly persuasive when it applies recent case law.  *See* NIGC Opinion, *Whitecloud Allotment* (Jan. 7, 2010) (attached to Doc. 6 as Exhibit 15, and discussed in Doc. 6 at pages 12-13) (relying on United States Supreme Court and Tenth Circuit opinions for its analysis of jurisdiction, and *Cheyenne River Sioux Tribe v. South Dakota*, 830 F. Supp. 523 (D.S.D. 1993), *aff'd* 3 F.3d 273 (8th Cir. 1993), which both parties to the present litigation agree are useful to the Court's determination of governmental power under the IGRA).

Because *UKB I*, introduced by Defendants at the preliminary injunction hearing on May 17, 2012,[1] does not possess sufficient indicia of persuasive authority, the Court need not grant those documents *Skidmore* deference.  Two letters from the Department of the Interior concerning the UKB were discussed:  *UKB I*, and a letter dated September 10, 2010 (*UKB II*), both authored by the former Department of the Interior Assistant Secretary for Indian Affairs, Larry Echo Hawk.  *UKB I* was a provisional decision; like the NIGC letter the *Catskill* court

---

[1] All UKB documents cited herein are available at http://keetoowahcherokee.org/.

determined was not subject to *Skidmore* deference, Echo Hawk "defer[ed] a final decision" on the question of whether land that was part of the former Cherokee Nation reservation could be taken in to trust for the UKB. *UKB I* at 4. The case is not persuasive because it is factually distinct from the case at bar. The UKB was the "sole owner" of the property they were attempting to place into trust. *Id.*[2] A specific statute required "consultation" with the Cherokee Nation, and the BIA had conducted consultation with the Cherokee Nation of Oklahoma ("CNO"). *Id.* at 4-5. The decision under review in *UKB I* had determined that the CNO had jurisdiction over the former Cherokee reservation, relying in part on the Tenth Circuit's opinion in *United Keetoowah Band v. Mankiller*, No. 92-C-585-B (N.D.O.K.), *aff'd* 2 F.3d 1161 (10th Cir. 1993), and the BIA had since determined that the CNO did *not* have exclusive jurisdiction. *UKB I* at 6. Echo Hawk relied on 25 U.S.C. § 476(f) (as amended in 1994)[3] to disregard Tenth Circuit law and held that both UKB and CNO were "successors in interest" to the Cherokee reservation. *Id.* at 3. He noted instances in which tribes have "shared jurisdiction" over land, including the land within the boundaries of the former Muscogee (Creek) Nation held *in trust* for the Thlopthlocco Tribal Town. *Id.* at 8.

---

[2] *The UKB owned the land in fee simple.*

[3] The 1994 amendment to 25 U.S.C. § 476 added subsections (f) and (g), which prohibit *departments or agencies* from making new or applying existing regulations "with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes." *Id.* (f). Congress considered this amendment to make "technical changes," Statement of Senator McCain, 140 Cong. Rec. S. 6144 (May 19, 1994), and was created specifically to address the BIA's classification of tribes into two categories: "created" and "historic," *id.* The BIA had been removing sovereignty from tribes and applying laws unequally. Statement of Representative Thomas, 140 Cong. Rec. H. 3802 (May 23, 1994). The legislative history of the 1994 amendment to 25 U.S.C. § 476 indicate it was not meant to make substantive changes to the application of existing law by all agencies, but merely to correct actions by the BIA, and only the BIA, that were inconsistent with law.

In *UKB II*, Echo Hawk withdrew his conclusion in *UKB I* that the UKB was a successor in interest to the Cherokee Reservation. *UKB II* at 4. *UKB II* permitted the UKB to amend their trust application. Presumably, because *UKB II* withdrew the successor in interest analysis, which was crucial to Echo Hawk's determination that the UKB could petition for certain land to be taken in to trust, but did not withdraw his finding that the UKB owned the particular land, it could be placed in to trust based on that ownership interest. In a May 24, 2011 letter taking the requested land in to trust, citing case law, the BIA's Eastern Oklahoma Regional Office indicated that it remained concerned about jurisdictional conflicts between the CNO and UKB, but was required to follow Echo Hawk's ruling. Letter, Eastern Oklahoma Regional Office (May 24, 2011) ("*UKB III*") at 7-8.

Echo Hawk's *UKB* decisions are not due *Skidmore* deference by the Court. *UKB I* professes that it is not a final decisions, and the aspect of that letter Defendants feel is crucial to their case is *withdrawn* by *UKB II*. Echo Hawk interpreted the 1994 amendment to 25 U.S.C. § 476 as requiring him to ignore Tenth Circuit law, a fallacy noted in *UKB III*. Further, the *UKB* decisions are factually dissimilar: The UKB owned in fee simple the land they sought to have taken into trust. It is undisputed that the Kialegee Tribal Town has *no* property interest in the Broken Arrow Property, and that they are not attempting to have any land taken into trust. Echo Hawk's examples of shared jurisdiction all involve trust or reservation land, where Congress clearly took an affirmative action to place land within the jurisdiction of specifically named tribes. Here, it is undisputed that the relevant treaties and grants vested the lands of which the Broken Arrow Property is a part in only one tribal entity, the Creek Nation, and that the only congressionally-directed action regarding the Broken Arrow Property was that the land be allotted subject to restriction against alienation. That property is held, subject to such restraint

against alienation, by two members of the Muscogee (Creek) Nation, who are stipulated, on the record, *not* to be members of the Kialegee Tribal Town, but to be Muscogee (Creek) Nation members.   Additionally, *UKB I*'s analysis was contrary to authority binding on this Court: *United Keetoowah Band of Cherokee Indians v. Mankiller*, in which the Tenth Circuit stated that "the Cherokee Nation is the only tribal entity with jurisdictional authority in Indian Country within the Cherokee Nation." 4 No. 93-5064, 1993 WL 307937, *4 (10th Cir. Aug.12, 1993) (unpublished); *see also Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 142 F.3d 1325, 1334 (10th Cir. 1998) (concluding that Congress had not abrogated "the Potawatomi Tribe's treaty right to the exclusive use and occupancy of its former reservation" and therefore that tribe had to consent before land within the boundaries of its former reservation were taken into trust for another tribe).  If the Court is going to consider Echo Hawk's *UKB* decisions, the State requests it also consider the NIGC's opinion letter determining that the UKB's casino, on a different parcel of land, was *not* the UKB's "Indian lands" for purposes of the IGRA because there was no indication that Congress intended the land to be Indian country.  NIGC Letter to Tracie Stevens (July 18, 2011).[4]

The Court may grant *Skidmore* deference to those agency documents that it considers persuasive to the decision at hand.  The State submits that the *UKB* decisions are not persuasive authority and the Court should not consider those cases when conducting its analysis of the merits of the State's Motion for Preliminary Injunction, but that the authorities submitted by the State, including the Whitecloud Allotment NIGC opinion, should be granted *Skidmore* deference.

---

[4] This letter is available at:
http://www.nigc.gov/LinkClick.aspx?link=NIGC+Uploads%2Findianlands%2FUKB+legal+opinion+july+18%2C+2011.pdf&tabid=120&mid=957.

Respectfully submitted,


s/M. Daniel Weitman
M. Daniel Weitman, OBA# 17412
Assistant Attorney General
Litigation Unit
313 N. E. 21st Street
Oklahoma City, Oklahoma  73105
Telephone:     (405) 522-4274
Facsimile:      (405) 522-0669
Email: dan.weitman@oag.ok.gov

        and

MODRALL, SPERLING, ROEHL, HARRIS
            & SISK, P.A.

Lynn H. Slade
William C. Scott
Sara M. Stevenson
Post Office Box 2168
500 Fourth Street, N.W., Suite 1000
Albuquerque, New Mexico  87103-2168
Telephone: (505) 848-1800
Email: lynn.slade@modrall.com
Email: bscott@modrall.com
Email: sms@modrall.com
*ATTORNEYS FOR STATE OF OKLAHOMA*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2012, a true and complete copy of the within and foregoing **THE STATE OF OKLAHOMA'S BRIEF ON THE DEFERENCE THIS COURT SHOULD GIVE TO AGENCY LETTERS IN UNRELATED CASES IN CONSIDERING THE STATE'S MOTION FOR PRELIMINARY INJUNCTION** was electronically transmitted to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

JOSEPH R. FARRIS
JFARRIS@TULSALAWYER.COM

PAULA J. QUILLIN
PQUILLIN@TULSALAWYER.COM

DENNIS J. WHITTLESEY
DWHITTLESEY@DICKINSONWRIGHT.COM

ATTORNEYS FOR KIALEGEE TRIBAL TOWN,
FLORENCE DEVELOPMENT PARTNERS, LLC &
TIGER HOBIA

R. TOM HILLIS, OBA#12328
THILLIS@TITUSHILLIS.COM

JARED B. CAWLEY, OBA #19775
JARED_CAWLEY@HOTMAIL.COM

ATTORNEYS FOR BROKEN ARROW CITIZENS
AGAINST NEIGHBORHOOD GAMING, LLC

s/M. Daniel Weitman
M. Daniel Weitman

8