UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA,              )
                               )
            Plaintiff,          )
                               )
v.                             )          Case No. 12-CV-054-GKF-TLW
                               )
TIGER HOBIA, as Town King       )
and member of the Kialegee Tribal )
Town Business Committee; et al.,  )
                               )
            Defendants.         )

**OPINION AND ORDER**

Before the court is defendants' Motion to Reconsider the Preliminary Injunction in light

of subsequent changed circumstances [Dkt. #133].[1]  In the motion, defendants ask the court to

reconsider its Order concerning Kialegee Tribal Town jurisdiction over the site.  [*Id.* at 3].  The

State of Oklahoma opposes the motion.

**I. Background**

The State of Oklahoma ("State") filed suit on February 8, 2012, seeking declaratory,

preliminary, and permanent injunctive relief to prevent Tiger Hobia, Town King of the Kialegee

Tribe (as well as other tribal officers), Florence Development Partners, LLC ("Florence") and the

Kialegee Tribal Town, a federally chartered corporation (the "Town Corporation") from

proceeding with the construction and operation of the proposed "Red Clay Casino" in Broken

Arrow, Oklahoma.  The State alleged defendants' actions violated both the April 12, 2011,

Gaming Compact between the Kialegee Tribal Town and the State ("State Gaming Compact")

---

[1] The court, in a minute order entered May 31, 2012 [Dkt. #136], stated it would treat Defendant's Notice of Changed Circumstances and Motion for Modification of Court's Oral Order as two separate and distinct motions: (1) a Motion to Modify the Preliminary Injunction; and (2) a Motion to Reconsider the Preliminary Injunction in light of subsequent changed circumstances.

and the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA").  The same day, it

filed a Motion for Preliminary Injunction.  [Dkt. #4].

     The court conducted a hearing on plaintiff's Motion for Preliminary Injunction on May

16-18, 2012.  At the conclusion of the hearing, the court issued a ruling granting plaintiff's

Motion for Preliminary Injunction.  [Dkt. #127].[2]  On July 20, 2012, the court filed its written

findings of fact and conclusions of law.  [Dkt. #150].  The court concluded that defendants'

actions violated IGRA and the State Gaming Compact because the Broken Arrow Property was

not the Kialegee Tribal Town's "Indian lands" as defined by IGRA, and that the Tribal Town did

not exercise government power over the property within the meaning of IGRA.  [*Id.* at

Conclusions of Law ¶¶37, 40-41].  The court concluded that defendants' "efforts to construct and

operate a gaming facility on the Broken Arrow Property violate [the Indian Gaming Regulatory

Act] and—as to Class III gaming—the Kialegee-State Gaming Compact."  [*Id.* at 41].

     The court preliminarily enjoined defendants from (1) proceeding with development or

construction of the proposed Red Clay Casino or any other gaming facility on the Broken Arrow

Property; and (2) conducting Class III gaming on the Broken Arrow Property.  [*Id.*].  The court

noted in its written order that defendants had admitted the building under construction was

"designed to be a sports bar and casino," but stated "the court will entertain a motion to modify

the injunction if defendants wish to alter the purpose of the structure and have obtained the

---

[2] One week later, on May 25, 2012, Tracie Stevens, Chairwoman of the National Indian Gaming Commission ("NIGC") (citing and attaching an opinion from the DOI Solicitor's Office) advised Town King Tiger Hobia the NIGC had concluded that while the Broken Arrow Property qualified as Indian land under IGRA, it is not within the Kialegee Tribal Town's jurisdiction because the Tribe has not demonstrated its legal jurisdiction over the parcel. [Dkt. ##134-1, 134-2].  She directed the Kialegee Tribal Town not to commence gaming under IGRA.  [*Id.*].  On May 29, 2012, the Tribal Town submitted a Request for Reconsideration, in which, *inter alia,* it informed Stevens that the Tribal Town had enrolled Giles and Capps as members on May 26, 2012.  [Dkt. #138-1].  In a response dated June 8, 2012, Stevens denied the Request for Reconsideration.  [Dkt. #138-2].  Citing *Miami Tribe of Okla. v. U.S.,* 656 F.3d 1129 (10th Cir. 2011), *United States v. Mazurie,* 419 U.S. 544 (1975), and *Kansas v. U.S.,* 249 F.3d 1213 (10th Cir. 2001), Stevens concluded "the change in circumstance presented does not alter the May 25 decision."  [*Id.*].

necessary regulatory approvals form the [Bureau of Indian Affairs] and/or the Muskogee (Creek) Nation for the alternative proposed use or uses."  [*Id.* at 40-41].

## II. Motion to Reconsider

In their Motion to Reconsider, defendants advise the court that on May 23, 2012, the owners of the restricted allotment, Marcella Giles and Wynema Capps, applied for enrollment as members of the Kialegee Tribal Town and on May 26, 2012, the Business Committee of the Kialegee Tribal Town voted unanimously the enroll Giles and Capps as members.  [*Id.*]. Defendants assert, once again, that they share jurisdiction of the Broken Arrow Property with the Muscogee (Creek) Nation.  They also contend the recent enrollment of Giles and Capps as members of the Kialegee Tribal Town—viewed in light of the history of the Muskogee Creek Nation and the Kialegee Tribal Town—"provides the Kialegee Tribal town with a direct interest in the [Broken Arrow Property] and constitutes a change in circumstances that warrants reconsideration."

The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion.  *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).  A motion to reconsider "is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple."  *Syntroleum Corp. v. Fletcher Int'l, Ltd.,* No. 08-CV-384-JHP-FHM, 2009 WL 761322, at *1 (N.D. Okla. March 19, 2009) (quoting *Maul v. Logan Cty. Bd of Cty. Comm's*, No. CIV-05-605, 2006 WL 3447629, at *1 (W.D. Okla. Nov. 29, 2006).  "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).   In other

words, a motion to reconsider is appropriate when the court has "misapprehended the facts, a party's position, or the controlling law." *Id.*; *see Syntroleum Corp.,* 2009 WL 761322, at *1. "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete,* 204 F.3d at 1012.

The court will not revisit the issue of shared jurisdiction, as it was thoroughly briefed by the parties and considered by the court in its written findings and conclusions. This leaves for consideration the impact of the subsequent enrollment of the property owners as members of the Kialegee Tribal Town.

Where purportedly new evidence is presented in a motion for reconsideration, the court does not abuse its discretion in denying the motion when the new evidence would not change the result. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1386 (10th Cir. 1997) (holding district court did not abuse its "considerable discretion" in denying motion for reconsideration where allegedly newly-discovered bid tally sheets did not contain information sufficient to satisfy statute of frauds). Thus, the issue before the court is whether the recent enrollment of Giles and Capps as members of the Kialegee Tribal Town—either viewed alone or in concert with the "shared jurisdiction" argument—vests the tribe with shared jurisdiction over the Broken Arrow Property.

The factual scenario in this case is similar in some respects to the facts in a series of decisions pertaining to the Miami Tribe of Oklahoma: *Miami Tribe of Okla. v. United States*, 927 F.Supp. 1419 (D. Kan. 1996) ("*Miami Tribe I*"); *Miami Tribe of Okla. v. United States*, 5 F.Supp.2d 1213 (D. Kan. 1998) ("*Miami Tribe II*"); *Graves v. United States,* 86 F.Supp.2d 1094 (D. Kan. 2000) ("*Miami Tribe III*"); *Kansas v. United States*, 249 F.3d 1213, 1219 (10th Cir.

2001) ("*Miami IV*"); and *Miami Tribe of Oklahoma v. United States*, 656 F.3d 1129, 1145 (10th Cir. 2011).

In *Miami Tribe I*, the Miami Tribe of Oklahoma sought review of an NIGC decision that a restricted Indian allotment ("Reserve No. 35") on which a bingo facility was to be built was not "Indian land" as defined by IGRA.  The NIGC, in reaching its decision, evaluated the historical record, including various treaties, United States attorney general opinions, congressional reports and court decisions, and concluded the tribe had relinquished its jurisdiction of the area at issue no later than 1884 and Congress expressly abrogated the tribe's jurisdiction by legislation passed in 1873.  927 F. Supp. at 1426-27.  The court found there was no evidence supporting the tribe's argument that the original allottee, Maria Christiana DeRome, and/or her descendants were members of the tribe. *Id.* at 1427.   Likewise, it concluded the tribe had failed to present evidence supporting its assertion the current owners of Reserve No. 35 had consented to become members. *Id.*

The tribe did not appeal the district court's decision.  Rather, in 1996, it amended its constitution to remove the blood quantum requirement for membership in the tribe and subsequently passed an ordinance admitting the non-Indian owners of the tract (heirs of Maria Christiana DeRome) into the tribe.  *Miami Tribe II,* 5 F. Supp. 2d at 1215.  The owners, in turn leased the land to the tribe and consented to the tribe's exercise of jurisdiction over the property. *Id.*  The tribe asked the NIGC to reconsider its refusal to approve the proposed gaming management contract.  The NIGC again determined the land was not "Indian lands" as required under IGRA and refused to approve the contract.  *Id.* at 1216.  The NIGC decision did not, however, specifically address the issue of whether the tribe had jurisdiction over the property, nor did it contain reference to tribal ordinances and other activities the Tribe asserted were

examples of exercise of governmental authority.  *Id.* at 1218-1219.  As a result, the district court

set the decision aside as an abuse of discretion, finding the agency had "failed to provide a

reasoned explanation for its action."  *Id.*

On remand, the NIGC determined, based on events subsequent to *Miami I* that the tribe

now exercised governmental power over the tract, and that the tract did in fact constitute "Indian

lands" within the meaning of IGRA.  *Kansas,* 249 F.3d at 1220.   Armed with the favorable

NIGC decision, the tribe requested that the State of Kansas negotiate a gaming compact for Class

III casino gaming.  The State of Kansas sued the United States pursuant to the Administrative

Procedure Act ("APA"), seeking declaratory and injunctive relief from the NIGC's decision that

the tract at issue constituted "Indian lands" within the meaning of IGRA.  *Miami III,* 86 F. Supp.

2d 1095.  The district court, in granting the state's motion for preliminary injunction, held the

federal defendants "do not have a colorable claim that the Reserve is Indian Land." *Id.* at 1099.

On appeal, the Tenth Circuit affirmed the district court decision.  *Kansas,* 249 F.3d at

1231.  In so doing, the court highlighted the importance of the district court's finding, in *Miami*

*I,* that the Miami tribe did not have jurisdiction over the property.  It commented:

> Notably, none of the Defendants have ever challenged Miami
> Tribe I's findings and conclusions regarding the status of the tract.
> Rather, they rely solely on the Tribe's activities subsequent to
> Miami Tribe I to claim tribal jurisdiction over the tract—namely
> (1) the Tribe's adoption of the tract's twenty-plus owners into the
> Tribe, (2) those owners' consent to tribal jurisdiction pursuant to a
> lease with the Tribe, and (3) the Tribe's recent development of the
> tract.  None of these recent events, however, alters the conclusion
> that Congress abrogated the Tribe's jurisdiction over the tract long
> ago, and has done nothing since to change the status of the tract.
> An Indian tribe's jurisdiction derives from the will of Congress,
> not from the consent of fee owners pursuant to a lease under which
> the lessee acts.  We conclude the State of Kansas has a substantial
> likelihood of success on the merits of this cause.

*Id.* at 1230-31.

6

Most recently, in *Miami Tribe of Oklahoma,* 656 F.3d 1129, the Tenth Circuit considered whether the BIA erred in refusing to take the Reserve into trust for the Tribe.  The court stated that after a review of the history and previous cases, "we can safely conclude the tribe does not have jurisdiction over the Reserve and therefore does not exercise jurisdiction for the purposes of [25 U.S.C.] § 2216(a)."  *Id.* at 1143.  The court acknowledged the tribe had adopted the Reserve landowners as members of the tribe, received consent from the Reserve landowners to assert tribal jurisdiction pursuant to a lease and developed the Reserve, including regularly maintaining it and providing security.  However, it stated, "these are the same activities we rejected as a basis for the tribe's claim of jurisdiction over the Reserve in *Miami IV.*"  *Id.* at 1145.  It concluded, "Similarly, here, Miami Tribe cannot 'exercise jurisdiction' . . . without a congressional grant of jurisdiction over the Reserve." *Id.*  Further, it stated:

> Even if *Miami IV* were not on point, the case law does not support the proposition that the adoption of a landowner by a tribe confers jurisdiction.  *See United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975).  The tribe cannot create Indian reservation lands ex nihilo by adopting landowners into the tribe and claiming all of the new member's property.

*Id.* at 1145 n. 16.

This court recognizes that, in contrast to *Miami Tribe of Oklahoma*, the defendants herein do not rely on enrollment *alone* in support of their assertion of jurisdiction over the property.  However, this court previously determined, based on its review of congressional intent and purpose as reflected in the relevant legislation and treaties, including but not limited to the Act of March 1, 1901, 31 Stat. 861, which governed the allotment of the Creek Nation's lands, that the Kialegee Tribal Town does not have jurisdiction over the Broken Arrow Property.  As previously stated in Paragraph 18 of this court's Opinion and Order of July 20, 2012, the question of jurisdiction "focuses principally on congressional intent and purpose, rather than recent unilateral

actions" of a tribe or band.  *Kansas v. United States*, 249 F.3d 1213, 1229 (10th Cir. 2001).  This court concludes that, in light of congressional intent and purpose reflected in the relevant legislation and treaties, the recent enrollment of Giles and Capps as members of the Kialegee Tribal Town does not create jurisdiction over the Broken Arrow Property or otherwise alter the court's previous conclusion that the Tribal Town does not have jurisdiction over the property.

### III. Conclusion

For the foregoing reasons, defendants' Motion to Reconsider the Preliminary Injunction in light of subsequent changed circumstances [Dkt. #133] is denied.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT